FILED
2015 Jul-17  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ASHLYNN AVERY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) **Case No.: 2:13-cv-00826-MHH** |
| **vs.** | ) |
| | ) |
| **CITY OF HOOVER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

## I.    Introduction

Former Hoover High School student Ashlynn Avery brings this lawsuit against the City of Hoover, Alabama, the Hoover City Board of Education, the principal of Hoover High School, a school resource officer, and a school employee. The lawsuit relates to an incident that began while Ms. Avery was in "in school suspension" or ISS.  Ms. Avery alleges that the incident snowballed and that ultimately, a school resource officer shoved her "face first into a file cabinet," handcuffed her, and took her to the Hoover police station.  (Doc. 39, ¶¶ 20b-21).[1] Ms. Avery contends that she sustained injuries during the arrest.

---

[1] On page four of Ms. Avery's second amended complaint, there is a numbering error; paragraph numbers 18, 19, and 20 are each used twice.  Different factual matter is alleged in each of the six paragraphs.  In this opinion, the Court cites the first set of paragraphs as 18a, 19a, and 20a.  The Court cites the second set of paragraphs as 18b, 19b, and 20b.

In her second amended complaint, Ms. Avery asserts that the defendants violated her rights under the United States Constitution and federal and state law. (Doc. 39).   The defendants have moved to dismiss all of Ms. Avery's claims. (Docs. 42, 44, 46, 48, 49).   As discussed below, the Court grants the motions in part and denies them in part.

## II.    Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'"   *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D. Ala. March 26, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).   "Specific facts are not necessary; the statement needs only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations."  *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012).  "Where those two requirements are met . . . the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim."  *Id.*  When deciding a motion to dismiss, the Court must assume the truth of the factual allegations in the complaint and view those allegations in the light most favorable to the plaintiff.  *Adinolfe v. United Tech. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014) (internal citations omitted).

## III.    Factual and Procedural Background

The events that give rise to this lawsuit occurred while Ms. Avery was a student in the City of Hoover public school system.  Ms. Avery suffers from dyslexia, asthma, Type II Diabetes, and sleep apnea.   (Doc. 39, ¶ 14).  Consequently, in the fall of 2008, the Hoover public school system developed an individualized education plan ("IEP") for Ms. Avery.  The school system issued addendums to Ms. Avery's IEP in 2009 "and thereafter."  (Doc. 39, ¶ 16).[2]

---

[2]  The Eleventh Circuit Court of Appeals has described the IEP process as follows:

> [A parent who believes that his or her child needs special education services must] consent[] to have the child evaluated to determine whether the child is "a child with a disability" under the IDEA. *See* 34 C.F.R. §§ 300.320, 300.343.

In her amended complaint, Ms. Avery states that her dyslexia is "so severe, that she is able to read and write at only a very basic level, and this affects all her school subjects." (Doc. 39, ¶ 16). According to her IEP, Ms. Avery "tries to avoid class when she knows it is something that is difficult." (Doc. 39, ¶ 18a). To address these challenges, Ms. Avery's IEP calls for various types of instructional support such as books on tape and access to a computer. (Doc. 39, ¶ 19a).

---

Once a child is evaluated and determined to be "a child with a disability" under the IDEA, an "IEP team" is formed. *See* 34 C.F.R. § 300.344(a). The IEP team normally includes the parents, a regular education teacher, at least one special education teacher, a School Board representative, other individuals with relevant expertise, and the child (if appropriate). *Id.* at §§ 300.344(a)(1)–(7).

Once the IEP team is formed, meetings are held and an IEP is developed. *See* 20 U.S.C. § 1414(d)(1)(A)(i) (describing the necessary contents of an IEP). During the IEP-development process, parental involvement is critical; indeed, full parental involvement is the purpose of many of the IDEA's procedural requirements. *See Doe v. Alabama State Dep't of Educ.*, 915 F.2d 651, 661 (11th Cir. 1990); *see also Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 51 (1st Cir. 2000); 34 C.F.R. § 300.345 *1096* (outlining parental involvement in the IEP process).

Once an IEP is developed, the School Board must determine whether it will provide the special education needs of the child. *See Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 105 S. Ct. 1996, 2002, 85 L. Ed .2d 385 (1985) ("The Act contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible.") (citations omitted); *Loren F.*, 349 F.3d at 1312 ("Although the IDEA reflects a structural preference in favor of providing special education in public schools, it recognizes that certain public schools are unable or unwilling to provide appropriate special education services."). If the School Board elects not to provide the programs outlined in the IEP, it refers the child to a private school or program at no cost to the parents. *See* 20 U.S.C. § 1412(a)(10)(B)(i); 34 C.F.R. § 300.401.

*M.M. ex rel. C.M. v. School Bd. of Miami-Dade County, Fla.*, 437 F.3d 1085, 1095-97 (11th Cir. 2006).

On May 3, 2011, Hoover High School personnel suspended Ms. Avery for allegedly skipping class.  (Doc. 39, ¶ 12).  According to the second amended complaint, the reason the school gave for the ISS was pretextual—Ms. Avery was actually placed in ISS "as a punishment for what were the alleged effects" of the medical conditions in Ms. Avery's IEP.  (Doc. 39, ¶ 14).

While in ISS, Ms. Avery was instructed to read Huckleberry Finn.  Hoover High School did not give Ms. Avery the book on tape or access to a computer to help her complete the assignment.  (Doc. 39, ¶ 19a).  Because of her medical conditions, Ms. Avery dozed off while reading the book.  (Doc. 39, ¶ 18b).  To wake Ms. Avery, the ISS supervisor, defendant Joshua Whited, struck the cubicle in which Ms. Avery was sitting with his hand, causing the cubicle to hit Ms. Avery's head.  (Doc. 39, ¶ 19b).  When Ms. Avery dozed off again, Mr. Whited took the book that Ms. Avery was reading, "slammed the book onto the desk . . . in which she was sitting, . . . and screamed for her to wake up."  (*Id.*).  The book bounced on the desk and hit Ms. Avery in the chest.  (Doc. 39, ¶ 44).

Startled, Ms. Avery became hysterical.  (Doc. 39, ¶ 20b).  Ms. Avery was ordered to leave the room.  As she walked toward the principal's office, Ms. Avery called her mother from her cell phone.  (Doc. 39, ¶ 20b).  Trailing Ms. Avery down the hallway, Officer Bryant "made aggressive contact against her by slapping her backpack."  (Doc. 39, ¶ 20b).  Because Ms. Avery did not know who was behind

her, Ms. Avery said "leave me alone."  (Doc. 39, ¶ 20b).  Officer Bryant then shoved Ms. Avery "face first into a file cabinet and handcuffed her."  (*Id.*).

Ms. Avery was taken to the police station.  (*Id.* ¶ 21).  On the way, she vomited in the police car.  (Doc. 39, ¶ 21).  While handcuffed, Ms. Avery sustained injuries to her arm and wrist.  Ms. Avery wore a cast for a month, and she required treatment for temporary hearing loss after the incident.  (Doc. 39, ¶ 22).  Ms. Avery alleges that she also suffered emotional trauma for which she needed "extended mental counseling."  (Doc. 39, ¶ 23).

In her second amended complaint, Ms. Avery contends that Officer Bryant and Mr. Whited violated the City's policies concerning the use of force and the Board's disciplinary policies.  (Doc. 39, ¶¶ 24–25).[3]  Ms. Avery also states that the "Hoover School System has used suspensions against children with behavioral disabilities," (*Id.* ¶ 28), and that "[t]he actions of the Hoover School System encouraged and allowed police intervention [and] has prevent[ed] [Ms. Avery] from receiving full access to educational opportunities to which [she] is entitled." (Doc. 39, ¶ 29).

Based on this alleged conduct, Ms. Avery asserts an excessive force claim against Officer Bryant and the City of Hoover under 42 U.S.C. § 1983.  (Doc. 39,

---

[3] Because Ms. Avery was a minor when this action began, her mother, Tieshka Avery, filed this action.  When Ms. Avery reached the age of majority, she was substituted for her mother as the plaintiff.  (Docs. 68, 69).

p. 6).[4]  She asserts state law assault and battery claims against Officer Bryant and Mr. Whited.  (Doc. 39, p. 7).  Ms. Avery also asserts against all of the defendants a deliberate indifference claim under 42 U.S.C. § 1983 and a claim for violation of the ADA for "criminalizing disabilities and suspending children for manifestations of disabilities."  (Doc. 39, pp. 7, 8).  Finally, Ms. Avery asserts that the Hoover Board of Education failed to accommodate children with disabilities.  (Doc. 39, p. 9).

The defendants filed separate motions to dismiss.  (Docs. 42, 44, 46, 48, 49). The parties briefed the motions, and the Court heard argument concerning the motions.  (Doc. 70).  On this record, the Court resolves the defendants' motions to dismiss.

## IV.  Discussion

### A.  Section 1983 Excessive Force against Officer Bryant and the City of Hoover

#### 1.  Officer Bryant

Officer Bryant asks the Court to dismiss Ms. Avery's excessive force claim against him because he asserts that he is immune from suit.  "Qualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct 'does

---

[4] Plaintiff's counsel clarified at the hearing on the defendants' motions to dismiss that Ms. Avery wishes to pursue a claim for excessive force, not unlawful arrest.  (Hrg. Tr., p. 40).  A transcript of the hearing is available upon request.

not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If an officer demonstrates that he was acting within his discretionary authority at the time of the alleged violation, to overcome the officer's qualified immunity defense, the plaintiff must show that the officer violated a clearly established constitutional right. *Floyd v. Corder*, 426 Fed. Appx. 790, 791 (11th Cir. 2011) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)).

"[D]ecisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state . . . can clearly establish the law." *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (citing *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc)). Absent case law clearly establishing a constitutional violation, a plaintiff must allege facts demonstrating that the defendant official's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002); *see also Trammell v. Thomason*, 335 Fed. Appx. 835, 842 (11th Cir. 2009) (quoting *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000)).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to [a]ffect it." *Lee*, 284 F.3d at 1197 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotations omitted)). To decide "whether the degree of force used to effect a particular seizure is 'reasonable' under the Fourth Amendment," the Court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Court also examines "'(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.'" *Draper v. Reynolds*, 369 F.3d 1270, 1277–78 (11th Cir. 2004) (quoting *Lee*, 284 F.3d at 1197)). The excessive force inquiry is "necessarily fact specific." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). An officer is entitled to qualified immunity against an excessive force claim if "an objectively reasonable officer in the same situation could have believed that the force used was not excessive." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)).

The Court denies Officer Bryant's Rule 12(b)(6) motion to dismiss on the basis of qualified immunity because, at this stage of the litigation, Officer Bryant

cannot demonstrate on the record before the Court that he used only a level of force that was reasonable under the circumstances. Assuming the truth of the allegations in the second amended complaint and viewing the factual allegations in that complaint in the light most favorable to Ms. Avery, Officer Bryant shoved Ms. Avery into a filing cabinet and handcuffed her while she was walking down the hallway of her high school, talking to her mother on her cell phone. Officer Bryant argues that while Ms. Avery was walking down the school hallway, she violated two Alabama statutes: Alabama Code § 13A-11-7 which criminalizes disorderly conduct and Alabama Code § 13A-10-41 which makes it unlawful for an individual to resist an arrest by a peace officer. The only conduct described in the second amended complaint that is relevant to either statute is Ms. Avery's acknowledgement that she was "hysterical" as she walked down the school hallway toward the principal's office, and she said "leave me alone" after someone slapped her backpack from behind. (Doc. 39, ¶ 20b). Ms. Avery alleges that she did not know who was walking behind her down the school hallway. *Id.*

Applying *Graham*, the Court finds that the crimes that Officer Bryant identifies are not severe, and there is nothing in the second amended complaint that suggests that Ms. Avery was a threat to Officer Bryant or anyone else who may have been in the school hallway. Given that Ms. Avery alleges that she did not know that Officer Bryant was walking behind her, there is nothing in the second

amended complaint that indicates that Ms. Avery was actively resisting arrest or attempting to flee when Officer Bryant shoved her into the filing cabinet. Considering the *Draper* factors, given the circumstances that Ms. Avery describes in her second amended complaint, there would seem to be no need to use force at all to stop Ms. Avery.  The act of shoving her face first into a file cabinet and handcuffing her greatly exceeds the amount of force needed, and the injuries that Ms. Avery alleges are significant.  She asserts that she had to wear a cast on her right arm for one month, and she suffered temporary hearing loss.  (Doc. 39, ¶¶ 20b, 22).

The Court recognizes that there often are two sides to a story, but the only side of the story that the Court may consider at this stage is the depiction of events in the second amended complaint.  The Court notes that all but one of the qualified immunity opinions that Officer Bryant cites in his brief concern motions for summary judgment, not motions to dismiss.  (Doc. 43, pp. 46–52).  "The border between permissible and excessive force is marked by a fact-intensive test conducted case-by-case."  *Vinyard*, 311 F.3d at 1349 n.14.  After discovery, there may be additional facts that the Court may consider when evaluating Officer Bryant's immunity defense, but for now, the Court is limited to the four corners of the second amended complaint.

Viewed in the light most favorable to Ms. Avery, Officer Bryant's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits" that he should have known the force he exerted was excessive under the circumstances, even in the absence of case law clearly establishing a constitutional violation. *See, e.g.*, *Lee*, 284 F.3d at 1198–99 (holding that an officer's conduct was obviously unconstitutional when he arrested the suspect with handcuffs and then slammed the suspect's head into a car after she was fully secured). No reasonable officer in Officer Bryant's shoes would have thought the level of force Officer Bryant used was necessary to subdue an upset high school student walking down a school hallway and talking on the phone, even if the student's conduct was "disorderly." Therefore, the Court denies Officer Bryant's motion to dismiss.

### 2.    City of Hoover

Ms. Avery has pled sufficient facts to pursue her § 1983 claim against the City. Neither a municipality nor its officers may incur § 1983 liability under a theory of respondeat superior. *Monell v. Dep't of Social Serv's*, 436 U.S. 658, 691 (1978); *Barr v. Gee*, 437 Fed. Appx. 865, 874 (11th Cir. 2011) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). The City is not responsible for isolated incidents of constitutional violations by subordinates. *McDowell*, 392 F.3d at 1290–91. "It is only when the execution of the government's policy or

custom infl[i]cts the injury that the municipality may be held liable." *Barr*, 437 Fed. Appx. at 874 (internal quotations and citations omitted).

"Municipal policy or custom may include a failure to provide adequate training if the deficiency evidences a deliberate indifference to the rights of its inhabitants." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (internal quotation omitted). To establish deliberate indifference, the "plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Barr*, 437 Fed. Appx. at 874 (quoting *Lewis*, 561 F.3d at 1293). The municipality is on notice if either "(1) the municipality is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, or (2) the likelihood for a constitutional violation is so high that the need for training would be obvious." *Barr*, 437 Fed. Appx. at 874 (citing *Lewis*, 561 F.3d at 1293).

Ms. Avery alleges that Hoover "developed a de facto policy of using police officers in its employ . . . to respond to instances of behavioral disruptions of disabled children" by arresting the students, and Hoover "used suspensions against children with behavioral disabilities." (Doc. 39, ¶¶ 27-28). As counsel for Ms. Avery explained at the hearing in this matter, a teacher "who teaches a special ed student is instructed on [the student's] IEP extensively," but the City of Hoover

13

does not familiarize school resource officers with students' IEPs. (Hrg. Tr., p. 20). Consequently, those officers are unfamiliar with the needs of students who have IEPs, but Hoover nevertheless "encourage[s] and allow[s] police intervention into behavioral issues" and "use[s] suspensions against disabled children." (Doc. 39, ¶ 29). Ms. Avery has alleged sufficient facts at this stage to maintain her claim that the City had a policy or custom that is responsible for the injury that Ms. Avery has identified. That policy includes the failure to provide adequate training to officers who interact with students with IEPs.

### B.    Assault and Battery against Officer Bryant and Mr. Whited

To state claims for assault and battery under Alabama law, a plaintiff must plead facts that, if proven, show

> 'an intentional, unlawful offer to touch the person of another in [a] rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt if not prevented. A successful assault becomes a battery, which consists of the touching of another in a hostile manner.'

*Ex parte Am. Heritage Life Ins. Co.*, 46 So. 3d 474, 476–77 (Ala. 2010) (quoting *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995)). With respect to Mr. Whited, Ms. Avery alleges that he struck the side of her cubicle, causing the cubicle to hit her head. Ms. Avery also asserts that Mr. Whited slammed a book on her desk, and the book bounced and hit her chest. (Doc. 39, ¶¶ 19b, 44). Ms. Avery

14

contends that as a result of Mr. Whited's conduct, she "immediately felt threatened." (Doc. 39, ¶ 20b). Ms. Avery alleges that Officer Bryant committed a battery when he slammed her into a file cabinet and handcuffed her. (Doc. 39, ¶ 46).

Both Officer Bryant and Mr. Whited argue that they are entitled to immunity from the state-law claims. The Court considers the defendants' arguments in turn.

### 1.      Officer Bryant

Officer Bryant argues that he is entitled to state-agent immunity under *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000). Under *Cranman*, "exercising judgment in the enforcement of the criminal laws of the State, including, . . . law enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a)" entitles an officer to state-agent immunity. *See Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006). Therefore, any defendant who "(1) is a peace officer, (2) is performing law enforcement duties, and (3) is exercising judgment or discretion" is entitled to immunity. *Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003) (internal quotations omitted). When a defendant establishes that "the plaintiff's claims arise from a function that would entitle the State agent to immunity," the burden shifts to the plaintiff to show that the state-agent acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."

*Ex parte Randall*, 971 So. 2d 652, 663–64 (Ala. 2007) (internal quotations omitted).

Officer Bryant has established that he is a peace officer and that he was exercising judgment in the performance of his law enforcement duties at the time the events took place.  (Doc. 42, pp. 62–63).  Therefore, the burden shifts to Ms. Avery to demonstrate that Officer Bryant acted "willfully, maliciously, fraudulently, in bad faith, or beyond his authority."  *See Randall*, 971 So. 2d at 663–64.

Ms. Avery alleges that Officer Bryant (1) "violated the City of Hoover's policies and procedures concerning the use of force," (Doc. 39, ¶ 24), (2) "touched and frightened [her] in a harmful and/or offensive manner with the intent to harm [her]," (*Id.* at ¶ 43), and (3) "intentionally violated [her] rights under the Constitution . . . with malicious and reckless indifference to [her] rights." (*Id.* at ¶ 39).  The two latter assertions assign conclusory labels to Officer Bryant's conduct, and none of these allegations, if proven, would demonstrate that Officer Bryant acted willfully, maliciously, fraudulently, or in bad faith.

With respect to Ms. Avery's allegation concerning use of force, she specifically alleges that Officer Bryant approached her from behind, slapped her backpack, shoved her face first into a file cabinet, and handcuffed her, all because she was hysterical and talking on the phone to her mother as she walked down the

school hallway toward the principal's office.  Although Ms. Avery's allegation that Officer Bryant "violated the City of Hoover's policies and procedures concerning the use of force" is conclusory in tone and fails to offer details about the alleged policies and procedures, the Court already has found, for the purposes of this 12(b)(6) analysis, that Officer Bryant's use of force was obviously unconstitutional and beyond the level of force that a reasonable officer in Officer Bryant's shoes would have thought necessary and appropriate, even absent a written policy. Therefore, viewing the allegations of the complaint in the light most favorable to Ms. Avery, the Court will not dismiss her assault and battery claim against Officer Bryant because Ms. Avery, though somewhat inartfully, has alleged facts which, if proven, would allow Ms. Avery to establish that Officer Bryant acted beyond his authority so that his immunity defense would fail.

### 2.   Mr. Whited

Mr. Whited argues that he is immune from state-law claims against him in his official capacity under Article I § 14 of the Alabama Constitution.  (Doc. 47, p. 19).  Article I § 14 provides absolute immunity for the State of Alabama, and that immunity "extends to arms or agencies of the state."  *Ex parte Tuscaloosa Cnty.*, 796 So. 2d 1100, 1103 (Ala. 2000) (citing *Armory Comm'n of Ala. v. Staudt*, 388 So. 2d 991, 993 (Ala. 1980)).  "Local school boards are agencies of the State, not of the local governmental units they serve, and they are entitled to the same

absolute immunity as other agencies of the State." *Ex parte Bessemer Bd. of Educ.*, 68 So. 3d 782, 788–89 (Ala. 2011) (citing *Ex parte Hale Cnty. Bd. of Educ.*, 14 So. 3d 844, 848–49 (Ala. 2009)).  When local officials act as agents of the state, the officials enjoy absolute immunity from official-capacity lawsuits.  *Ex parte Tuscaloosa Cnty.*, 796 So. 2d at 1106 (citing *Matthews v. Ala. Agric. and Mech. Univ.*, 787 So. 2d 691, 697 (Ala. 2000)).[5]

Ms. Avery alleges that Mr. Whited "worked for the Hoover City Board of Education."  (Doc. 39, ¶ 6).   Therefore, Mr. Whited is entitled to absolute immunity for the claims against him in his official capacity.  The assault and battery claim against him in his individual capacity will go forward.[6]

### C.     Section 1983 Deliberate Indifference to Serious Medical Need against Officer Bryant, the City, and the Board

Ms. Avery's deliberate indifference claim fails because she has not alleged that she had a serious medical need.  A plaintiff stating a deliberate indifference claim must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.  *Mann*, 599 F.3d at 1306 (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).  To be "serious," the medical need must be "one that

---

[5] Ms. Avery initially argued that this case fits into the exception to § 14 immunity for causes of action seeking injunctive relief.  (Doc. 59, p. 20).  But Ms. Avery has conceded that her claim for injunctive relief against Mr. Whited is moot because she no longer attends Hoover High School. (*See* Doc. 75).

[6] Aside from absolute immunity, Mr. Whited raises no other defenses to the state-law claims.

has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).  In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Fernandez v. Metro Dade Police Dep't*, 397 Fed. Appx. 507, 511 (11th Cir. 2010) (quoting *Farrow*, 320 F.3d at 1243 (internal quotations omitted) (finding that the plaintiff had established a serious medical need when, after getting a prescription for dentures, the plaintiff had "pain, continual bleeding and swollen gums, two . . . teeth slicing into gums, weight loss, and . . . continuing medical problems" over fifteen months).

Ms. Avery has not alleged facts that, if proven, demonstrate that she had a serious medical need that posed a "substantial risk of serious harm." *See, e.g.*, *Fernandez*, 397 Fed. Appx. at 512 (plaintiff did not demonstrate a serious medical need when the plaintiff's evidence showed that "he suffered a bloody nose and mouth which lasted over five minutes, facial bruising, pain, disorientation, and blood [] in his nose").  Ms. Avery alleges that the defendants "ignor[ed] various medical conditions such as diabetes, sleep apnea[,] and asthma despite having prior knowledge of these conditions from her widely circulated IEP reports," and that Ms. Avery "was denied medical treatment and seriously placed in grave peril by

being placed in a Hoover Police Car upon which she vomitted [sic]."   (Doc. 1, ¶ 48).

None of Ms. Avery's medical conditions posed a substantial risk of serious harm at the time of her arrest.  Sleep apnea, diabetes, or asthma might give rise to a serious medical need in other circumstances, but none of the facts that Ms. Avery alleged suggest that her medical conditions posed a substantial risk of serious harm to her during her arrest.  Ms. Avery's alleged injuries corroborate the Court's finding—Ms. Avery sustained temporary hearing loss, emotional injuries, and injuries to her arm and wrist that required a cast.  (Doc. 39, ¶ 22).  These injuries, though potentially painful and upsetting, do not pose a substantial risk of serious harm.  Therefore, the Court will dismiss the deliberate indifference claims against Officer Bryant, the City, and the Board.

### D.   ADA Violations and Claim for Lack of Accommodations for Students with Disabilities

Ms. Avery's claims for "criminalizing disabilities" and "lack of accommodation for children with disabilities," Counts IV and V in the second amended complaint, both fail to state a claim because Ms. Avery failed to exhaust her administrative remedies.  Under the IDEA, "plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities."  *N.B. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996) (per curiam).  "[T]he IDEA's

exhaustion requirement [applies] to a 'broad' spectrum of claims." *A.L. ex rel. P.L.B. v. Jackson Cnty. Sch. Bd.*, 543 Fed. Appx. 1002, 1005 (11th Cir. 2013) (quoting *M.T.V. v. Dekalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006)). Additionally, "[t]he exhaustion requirement applies to claims asserting the rights of disabled children under . . . the Americans with Disabilities Act." *Jackson Cnty.*, 543 Fed. Appx. at 1005 n.4 (citing *M.T.V.*, 446 F.3d at 1157–58).

Recent Eleventh Circuit decisions interpreting the IDEA exhaustion requirement prevent Ms. Avery from asserting claims under the ADA without first exhausting her statutory remedies. Accordingly, the Court will dismiss Ms. Avery's ADA claims because she has not alleged that she initiated, much less exhausted, administrative proceedings to remedy the ADA violations that she alleges.[7]

## V.   Conclusion

For the reasons discussed above, the Court **GRANTS** the defendants' motions to dismisses for failure to state a claim the deliberate indifference to medical needs claim in Count III of the second amended complaint and the claims under the ADA in Counts IV and V of the second amended complaint. The Court **DENIES** the motions to dismiss Ms. Avery's § 1983 excessive force claim against

---

[7] At the hearing, the Court indicated that it would dismiss the claims against Mr. Hulin because, although he was listed as a defendant, no facts in the second amended complaint made reference to Mr. Hulin. (Hrg. Tr., p. 50).

Officer Bryant and the City of Hoover and the assault and battery claim against Officer Bryant.  The Court **GRANTS** in part and **DENIES** in part Mr. Whited's motion to dismiss.  The Court **DISMISSES** Ms. Avery's official-capacity claim against Mr. Whited, but her assault and battery claim against him in his individual capacity shall proceed.  The Court **DISMISSES** all claims against Mr. Hulin.  The Court directs the clerk to please term docs 42, 44, 46, 48, and 49.

      **DONE** and **ORDERED** this July 17, 2015.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE